IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT CARDIOVASCULAR SYSTEMS, INC. and EVALVE, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| EDWARDS LIFESCIENCES CORP. and EDWARDS LIFESCIENCES, LLC, | ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs Abbott Cardiovascular Systems, Inc. ("ACS") and Evalve, Inc. ("Evalve") (collectively, "Abbott" or "Plaintiffs"), for their Complaint against Defendants Edwards Lifesciences Corp. ("Edwards Corp.") and Edwards Lifesciences LLC ("Edwards LLC") (collectively, "Edwards" or "Defendants"), allege as follows:

## INTRODUCTION

1.      Edwards is about to infringe multiple Abbott patents covering its MitraClip®, a medical device that is revolutionizing the treatment of a life-threatening heart problem.

2.      Abbott spent years building a market from scratch for that patented product—over a decade from CE-mark approval in Europe, and two decades from the formation of Evalve.  To break into the market, Edwards tried to design around Abbott's patents.  That effort failed due to "poor … results."[1]

---

[1] Nocolo Piazza, et al., *Transcatheter Mitral and Pulmonary Valve Therapy*, J. AM. COLLEGE OF CARDIOLOGY. 53(20):1837-1851 at 1838-41 (2009); *see also* Michael J. Mack, *Percutaneous treatment of mitral regurgitation:  So near, yet so far!*, J. of THORACIC AND CARDIOVASCULAR SURGERY 135(3):238 (2008).

3.     Now, as Abbott's efforts to build a market expected to reach billions of dollars are paying off, Edwards is attempting to launch an infringing, copycat product called PASCAL.  The Court should preliminarily and permanently enjoin that infringing launch, which would undermine years of work and investment by Abbott.

4.     Abbott's groundbreaking MitraClip treats mitral regurgitation ("MR").  MR is a life-threatening condition arising from the mitral valve failing to close properly, allowing blood to flow backwards in the heart.  Before MitraClip, the standard of care for treating MR was highly-invasive open-heart surgery, requiring stopping a patient's heart.  MitraClip avoided that high-risk surgery with an entirely new field of non-surgical treatment.

5.     Abbott began developing MitraClip in the 1990s.  Implanting a device into a beating heart presented enormous design, regulatory, doctor-training, and reimbursement challenges.  Yet, Abbott persevered, overcoming all the hurdles associated with this first-in-class device.  After years of demonstrated outcomes and study, Abbott is changing how the medical community thinks about its new non-surgical procedure known as "edge-to-edge repair."

6.     MitraClip is so groundbreaking that the New York Times touted MitraClip in September 2018 *on its front page*, calling MitraClip a "huge advance" that "sharply reduced deaths among patients with a grim prognosis."[2]   Doctors describe MitraClip as "a game changer," permitting them to treat MR "in a way we never thought we could."[3]

---

[2] Gina Kolata, *Tiny Device is a 'Huge Advance' for Treatment of Serious Heart Failure*, THE NEW YORK TIMES (Sept. 23, 2018)*, available at:* https://www.nytimes.com/2018/09/23/health/heart-failure-valve-repair-microclip.html (last visited: January 27, 2019).

[3] *Id.*

7.     Because MitraClip is so pioneering—in the FDA's words, "a first-in-class device representing a breakthrough technology"[4]— Abbott has invested hundreds of millions of dollars and devoted nearly two decades to developing MitraClip, obtaining regulatory approvals, and training doctors throughout the world.

8.     Abbott's investments are bearing fruit.  In September 2018, for instance, a large clinical trial established MitraClip as the "first therapy" to treat certain "high-risk patients" with "difficult-to-treat" MR.[5]  The clinical results were so "profound" that when announced at a major medical conference, the audience reacted with "spontaneous, rare, mid-presentation applause" and "cheering," reflecting a "once-in-a-lifetime" medical "revelation."  MitraClip "knocked it out of the park."[6]

9.     PASCAL's launch would transform a highly complex market in numerous ways, all impossible to quantify.  Edwards is already targeting MitraClip customers, and has told investors PASCAL is an "alternative" to MitraClip.[7]

10.     MitraClip is purchased in bulk, and a PASCAL sale could convert an entire MitraClip hospital to PASCAL.  PASCAL also would interfere with the customer relationships

---

[4] Letter from Denise Hinton, Chief Scientist, FDA to Stephanie Philbin, Goodwin & Proctor LLP, Re: Citizen Petition for Due Diligence Determination of Patent Term Extension for MITRACLIP CDS; Docket Nos. FDA-2014-E-2358; FDA-2014-E-2359 (FDA RADM Chief Scientist Letter) at 7–8 (July 12, 2018) (denying petition).

[5] Gina Kolata, *Tiny Device is a 'Huge Advance' for Treatment of Serious Heart Failure*, THE NEW YORK TIMES (Sept. 23, 2018), *available at:* https://www.nytimes.com/2018/09/23/health/heart-failure-valve-repair-microclip.html (last visited: January 27, 2019).

[6] Gregg W. Stone, *COAPT: MitraClip reduces hospitalization mortality in HF, mitral regurgitation*, CARDIOLOGY TODAY'S INTERVENTION ARTICLE (Sept. 23, 2018).

[7] Transcript, Edwards Lifesciences Corporation Presentation at Goldman Sachs 39th Annual Global Healthcare Conference at 13–14 (June 13, 2018).

Abbott has been building to expand the MitraClip market as well as the market for its future structural heart products.

11.     Abbott stands to lose an unquantifiable number of customers and sales, even beyond MitraClip.

12.     The timing could not be worse.  Edwards is manufacturing PASCAL in the U.S. and plans a European launch by mid-2019.  That follows right on the heels of Abbott's "seminal" clinical trial, called "COAPT," that established that MitraClip is effective in treating certain MR patients who have little other option, and that is expected to "expand … MitraClip['s] market into the multibillion-dollar range."[8]  Abbott would lose the benefit of years of investment.

13.     MitraClip is poised to be the standard of care for MR patients.  To get FDA approval, Edwards is testing PASCAL against MitraClip in a "noninferiority" trial, designed to show PASCAL is not inferior to MitraClip (as opposed to a superiority trial).[9]  Edwards concedes Abbott's COAPT trial will serve "as the benchmark" for expanding the market.[10]

14.     Further, Edwards already appears intent on implying PASCAL can treat patients MitraClip cannot, even though Edwards is only now beginning to test PASCAL head-to-head with MitraClip in a non-inferiority study.[11]  Regardless of their truth, Edwards' suggestions will irreparably harm MitraClip's reputation.

---

[8] Aallison Gatlin, *Abbott Tops Bearish Odds In 'Landmark' Study Of Heart Device*, INVESTOR'S BUSINESS DAILY (Sept. 24, 2018).

[9] Transcript, Edwards Lifesciences Corporation FQ3 2018 Earnings Call at 11 (Oct. 23, 2018).

[10] Transcript, Edwards Lifesciences Corporation Analyst/Investor Day at 34 (Dec. 5, 2018).

[11] Transcript, Edwards Lifesciences Corporation FQ3 2018 Earnings Call at 11 (Oct. 23, 2018).

15.     This is a classic case warranting an injunction.  Infringement of just one valid claim is sufficient for an injunction.  Yet PASCAL infringes dozens of valid claims in five patents.

16.     And irreparable harm is established in multiple ways, including that PASCAL's launch would unjustifiably create a "two-player market," "the existence" of which alone "may well serve as a substantial ground for granting an injunction."[12]

17.     The public interest also would be served by protecting patent rights and the innovation they encourage, particularly here, where MitraClip can serve the market on its own as it has done for years.

18.     Edwards' imminent infringement is precisely what our patent system's exclusionary rights are designed to protect against.  Abbott's patents give it the right to protect the market that its groundbreaking inventions made possible.  Edwards' infringement should be stopped first through a preliminary injunction and then through a permanent injunction.

## NATURE OF THE ACTION

19.     The United States Patent and Trademark Office ("USPTO") awarded a robust patent portfolio that protects Abbott's inventions relating to the MitraClip, including United States Patent Nos. 7,288,097 ("the '097 patent"), 6,752,813 ("the '813 patent"), 7,563,267 ("the '267 patent"), 7,736,388 ("the '388 patent"), and 8,057,493 ("the '493 patent") (collectively, "the Patents-in-Suit").

20.     This is an action for infringement of the Patents-in-Suit.

21.     This action is based on the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq.*

---

[12] *Robert Bosch LLC v. Pylon Mfg.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011).

**THE PARTIES**

22.     Plaintiffs form part of the structural heart and vascular businesses of Abbott Laboratories, a broad-based healthcare company with a robust portfolio of innovative and life-saving cardiovascular and structural heart products, including stents, surgical valves and minimally invasive valve repair and replacement devices.

23.     Plaintiff ACS is a corporation organized and existing under the laws of the State of California and has its principal place of business at 3200 Lakeside Drive, Santa Clara, California. ACS markets and sells the MitraClip under exclusive license to the Patents-in-Suit from Evalve.

24.     Plaintiff Evalve is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 4045 Campbell Avenue, Menlo Park, California.  Evalve holds legal title to the Patents-in-Suit as the assignee.

25.     Edwards Corp. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at One Edwards Way, Irvine, California.

26.     Edwards LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at One Edwards Way, Irvine, California.

27.     Edwards has manufactured, does manufacture, and/or will manufacture medical devices for cardiovascular procedures, including the PASCAL mitral valve repair system, in the United States for export, use, sale and offer for sale outside of the United States, including in Europe.

**JURISDICTION AND VENUE**

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) *et seq*.

29.     This Court has personal jurisdiction over Edwards Corp. and Edwards LLC because, *inter alia*, they are incorporated in Delaware, and thus reside in this District.

30.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)–(c) and 1400(b), because, *inter alia*, Edwards Corp. and Edwards LLC are incorporated in Delaware, and thus reside in this District.

## BACKGROUND

### The Human Heart

31.     The heart is vital to human health, pumping blood throughout the body, which supplies oxygen and nutrients to the body's organs and aids in the removal of carbon dioxide and other wastes.  If disease or injury impairs the blood pumping ability of the heart, the body's organs may not receive adequate blood to function normally.

32.     The human heart has four chambers.  The heart's upper chambers are the "atria" and the lower chambers are the "ventricles."  The upper chambers are further divided into the left atrium and right atrium, and the lower chambers into the left ventricle and right ventricle (from a patient's perspective of the heart):



***Figure 1***
**([https://www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation/symptoms-causes/syc-20350178](https://www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation/symptoms-causes/syc-20350178))**

33.     The contraction and expansion of the atria and ventricles causes blood to be pumped throughout the body.

34.     The heart has four one-way valves, each one positioned at the outflow portion of one of the chambers of the heart.  The valves open and close in coordination with the pumping of the heart to unidirectionally control the flow of blood.  Each valve has a set of leaflets that, in a healthy heart, open to allow blood to pass from a chamber, and close to prevent blood from flowing backwards into the chamber from which it came.  In this way, a healthy heart supplies the organs of the body with oxygen and nutrients.

35.     One of the four heart valves is the mitral valve.  The mitral valve is located between the left atrium and the left ventricle:



***Figure 2***
**([http://mitraclip.com/about_mitral_regurgitation](http://mitraclip.com/about_mitral_regurgitation))**

**Mitral Regurgitation**

36.     Heart valves sometimes do not function properly, leading to a heart condition.  One of these heart conditions is MR.

37.     MR occurs due to abnormalities of the mitral valve.  When the mitral valve does not close properly during contraction of the left ventricle, blood can flow backwards through the mitral valve and back into the left atrium.  This can result in irreversible damage to the cardiac functions of the heart as well as several other serious health complications.

## Prior Surgical Treatments for MR

38.     Historically, MR was treated with open-heart surgery in which the heart is exposed by way of a large opening cut through the chest and stopped, the patient put on a cardiopulmonary bypass machine, and the valve either replaced or repaired.

39.     One method of open-heart surgical repair for MR, put into practice by Dr. Ottavio Alfieri in the early 1990s, involved suturing the mitral valve leaflets to each other to create a double-orifice in a technique that became known as the "Alfieri" stitch:



***Figure 3***
***(C. Fucci et al., "Improved results with mitral valve repair using new surgical techniques, Eur. J. Cardio-thorac. Surg. Vol. 9, No. 11 p: 621–627 at 623, Fig. 2 (1995))***

40.     Open-heart surgery for MR is associated with some significant disadvantages, including significant medical risks and severe surgical trauma.

41.     An open-heart surgery patient will often require several months of recovery.

42.     Open-heart surgery, and its associated recovery time, can be costly for patients and health care providers.

43.     Some patients, due to their advanced age or medical conditions, cannot undergo open-heart surgery.

44.     Thus, before the development of MitraClip and the inventions of the Patents-in-Suit, there remained a large unmet need for an effective, less invasive medical treatment for patients suffering from MR.

### Abbott's MR Solution: MitraClip

45.     Applying their expertise and ingenuity as well as considerable resources, scientists and engineers at Evalve, collaborating with physicians, worked to solve this unmet medical need from the 1990s when Evalve was founded, through the late 2000s and early 2010s when the product of their efforts ultimately received marketing approval (first in Europe and later in the U.S.).  These efforts resulted in the MitraClip.



*Figure 4*
([https://www.ctsnet.org/article/brief-description-percutaneous-mitral-repair-procedure-using-mitraclip%C2%AE-device](https://www.ctsnet.org/article/brief-description-percutaneous-mitral-repair-procedure-using-mitraclip%C2%AE-device))

46.     After conceiving of this innovative technology, the Evalve team conducted feasibility studies with the new device in the laboratory and in animals, demonstrating that it could successfully resolve MR without open-heart surgery.

47.     Based on this data, in 2003, the U.S. Food and Drug Administration ("FDA") approved the conduct of trials in humans, allowing Evalve's collaboration with the medical community in the development of an entirely new medical procedure with tremendous benefits for patients.

48.     In July 2003, Evalve commenced clinical trials to evaluate the safety and effectiveness of the MitraClip, including the Endovascular Valve Edge-to-Edge Repair Study ("EVEREST") I, EVEREST II Randomized Clinical Trial, and the EVEREST II High Risk Registry Study.  These trials provided additional information and data regarding the safety and efficacy of the MitraClip.

49.     Based on these clinical trials, the MitraClip device received regulatory approval from agencies around the world.  The MitraClip device received "CE-Mark" approval for marketing in Europe in 2008, and is now approved for commercial distribution in over two-dozen European countries.

50.     The MitraClip also received FDA approval for marketing in the United States in 2013.

**Abbott's Continued Investment In MitraClip**

51.     Recognizing the value of the technology Evalve had developed, Abbott Laboratories fully acquired Evalve in 2009, increasing the stake it had previously held following the 2006 acquisition of the vascular device division of Guidant Corporation.

52.     Abbott has since devoted significant resources to the further development and production of the MitraClip device.

53.     Abbott has trained and deployed a global workforce to develop clinical training and sales channels and relationships with MitraClip customers, including medical facilities and physicians.  Abbott also has devoted significant resources to educating the medical community about edge-to-edge transcatheter mitral valve repair and its benefits.

54.     Abbott also has devoted, and continues to devote, considerable resources to the MitraClip's clinical development.  For example, after the MitraClip received regulatory approval, Abbott sponsored the ACCESS-EU trial in Europe, and the REALISM trial in the United States, to further assess the safety and efficacy of the MitraClip.

55.     More recently, Abbott conducted the COAPT trial to further study MitraClip in symptomatic secondary (functional) MR patients.  The results of this study—unveiled at the Transcatheter Therapeutics (TCT) conference in San Diego in September 2018—showed that MitraClip treatment "significantly reduced not only the primary endpoint of heart failure (HF) rehospitalizations, but also mortality at 2 years."[13]

56.     Abbott also has invested significantly in further development of the MitraClip, in response to physician feedback.  Abbott has developed next-generation versions of the MitraClip that build upon Evalve's successful work, to further improve the MitraClip features and ease-of-use and treatment of a broader range of patients.

---

[13] *See* Shelley Wood, *COAPT: MitraClip Reduced Repeat Hospitalizations, Mortality in Functional MR Patients With Severe HF*, TCTMD, https://www.tctmd.com/news/coapt-mitraclip-reduces-repeat-hospitalizations-mortality-functional-mr-patients-severe-hf s (last visited: January 27, 2018).

57.     Abbott's development efforts resulted in the second-generation MitraClip NT, which received CE-Mark approval in December 2015 and FDA approval in 2016, and the third generation MitraClip NTR and XTR, which received CE-Mark approval for use in Europe in early 2018 and FDA approval in June 2018.

58.     Abbott also continues to work on further enhancements to the MitraClip and plans to launch subsequent generations of MitraClip over the next several years.

**Features of the MitraClip**

59.     As shown in the images below, the MitraClip treats MR by grasping the mitral valve leaflets from the atrial and ventricular sides and bringing them closer to perform an edge-to-edge repair without the trauma of open-heart surgery.  This closer arrangement of the leaflets allows more effective closing of the valve to reduce or eliminate undesirable reverse flow, or MR.



*Figure 5*
(**https://www.heartvascularcentre.com/treatments/**)

60.     The MitraClip is delivered to a beating heart through a minimally invasive procedure that uses a catheter introduced through the patient's femoral vein.  A physician can navigate the MitraClip through the patient's vasculature to the site of the MR in the heart, and then advance and manipulate the MitraClip for proper positioning and permanent placement on the mitral valve remotely from outside the patient's body.

61.     The minimally invasive nature of the MitraClip obviates the need for open-heart surgery.

**The Success of MitraClip**

62.     MitraClip is the only approved transcatheter option for edge-to-edge mitral valve repair, and it delivers meaningful improvement in cardiac function with a low safety risk and low incidence of device complications.

63.     MitraClip has received extensive industry and clinical praise and recognition for its contributions to cardiovascular care.

64.     As just a few of many examples, physicians have praised MitraClip as a "first-in-class transcatheter mitral valve repair device."[14]

65.     Others have said "[i]t is clear that the MitraClip offers significant clinical and quality-of-life benefit to patients, with an excellent safety profile compared with surgical intervention."[15]

66.     MitraClip has been recognized as "the predominant alternative non-surgical treatment option for patients with symptomatic mitral regurgitation (MR) who were judged inoperable by a heart team …demonstrating a wide acceptance for this interventional treatment."[16]

---

[14] Eric J. Velazquez, et al., *The MitraClip and Survival in Patients with Mitral Regurgitation at High Risk for Surgery: A Propensity-matched Comparison*, AM. HEART J., VOL. 170, No. 5, pp. 1050-1059 at 1050 (2015).

[15] Alice Perlowski & Ted Feldman, *Percutaneous Treatment of Mitral Regurgitation: The MitraClip Experience*, INTERVENT CARDIOL. CLIN., Vol. 1 pp. 63-72 at 71 (2012).

[16] Martin Orban & Jörg Hausleiter, *Edge-to-Edge Mitral Valve Repair: Solid Data and a Prosperous Future*, HEART 104(4):280-281 at 280 (2018).

67.     Others have credited MitraClip for "significantly advanc[ing] the field of transcatheter therapy for mitral valve regurgitation [and] … becom[ing] the most widely adopted TMVR [*sic*] approach worldwide …."[17]

68.     As described in a front-page article in the New York Times, after seeing the results of the COAPT study, physicians have called MitraClip a "game changer" and "a huge advance," and commented that it "will change how we treat these patients."[18]

69.     Abbott has received a number of industry awards for the MitraClip.

70.     In 2017, Fast Company named Abbott to its annual list of the top 10 most innovative companies and emphasized the MitraClip as one of Abbott's "Latest Breakthroughs."

71.     In 2015, Abbott won the Chicago Innovation Award for the MitraClip.

72.     The MitraClip also won the gold in the 2011 Edison Awards as the best new surgical aids product in the science and medical category.

73.     And in 2010, the MitraClip received the DiNA award for Outstanding Therapeutic and Product medical device.

74.     In addition to this industry praise and recognition, the USPTO, as well as other patent offices around the world, have awarded patents on the technology that is essential to clipping devices and embodied by the MitraClip, including the Patents-in-Suit.

---

[17] Mario Gössl, et al., *Current Status of Catheter-Based Treatment of Mitral Valve Regurgitation*, CURR. CARDIOL. REP. 19:38 at 1-2 (2017).

[18] *See* Gina Kolata, *Tiny Device is a 'Huge Advance' for Treatment of Serious Heart Failure*, THE NEW YORK TIMES (Sept. 23, 2018), *available at:* https://www.nytimes.com/2018/09/23/health/heart-failure-valve-repair-microclip.html (last visited: January 27, 2019).

**Edwards' Failed Attempt At Transcatheter Edge-to-Edge Mitral Valve Repair**

75.     Edwards attempted to develop and market an edge-to-edge transcatheter mitral valve repair system, but was not successful.

76.     Specifically, Edwards failed with its "Mobius" Leaflet Repair System that it attempted to develop in the 2000s.  The Mobius system attempted to repair the mitral valve using a catheter-delivered "stitch" to effect an edge-to-edge mitral valve repair.

77.     Edwards tried to develop this "Mobius" device into a viable commercial product for eight years. However, the investigation and development of the Mobius device was suspended because of "mixed results, procedural complexity, and a perceived limited patient population."[19]

78.     The poor durability and low procedural success rate of Mobius led investigators to suspend further experimentation with the device during phase 1 of clinical trials.[20]

79.     At the 30-day follow-up period, less than one-half of the total patients enrolled had a successful stitch in place.[21]

80.     Edwards ultimately discontinued the Mobius system, and never brought it to market.

---

[19] Michael J. Mack, *Percutaneous treatment of mitral regurgitation:  So near, yet so far!*, J. of THORACIC AND CARDIOVASCULAR SURGERY 135(3):238 at 238 (2008).

[20] Nocolo Piazza, et al., *Transcatheter Mitral and Pulmonary Valve Therapy*, J. AM. COLLEGE OF CARDIOLOGY. 53(20):1837-1851 at 1840 (2009).

[21] *Id.*

81.     Subsequently, in 2012, Edwards' CEO acknowledged that "[t]he minimally invasive transcatheter route for mitral valve repair 'has been a tough one' for the company to break into."[22]

**Edwards' Development of the Infringing PASCAL Device**

82.     Edwards did not stop its efforts to bring to market an edge-to-edge transcatheter mitral valve repair system after its failure with the Mobius system.   Rather, Edwards saw the success of Abbott's patent-protected MitraClip device and set out to copy Abbott's patented technology.   The result is PASCAL: Edwards' infringing mitral valve repair system.

83.     PASCAL is described in slides from a September 2018 presentation by Ted Feldman, M.D., at the PCR London Valves Conference[23]:

---

[22] *Edwards' pursuit of transcatheter mitral valve repair options continues, CEO says*, THE GRAY SHEET 12(70), Elsevier, Inc. (July 2, 2012).

[23] Ted Feldman, *Case-based learning for the Heart Valve Team: percutaneous treatment of primary MR -- Device options: leaflet repair*, 2018 PCR LONDON VALVES PRESENTATION (Sept. 9-11, 2018) *available at:* https://media.pcronline.com/diapos/PCRLondon2018/11-20180910_1130_Room_3_Feldman_Ted_1111_(975)/Feldman_Ted_20181009_1130_Room_3.pdf (last visited: January 27, 2019).



**Figure 6**

84.     Edwards also published results from a PASCAL feasibility study in mid-2017 in *The Lancet*.[24]

85.     A clinicaltrials.gov entry reports that Edwards has been conducting its "CLASP" trial for CE-Mark approval of PASCAL since June 2017.[25]

86.     Edwards has reported to shareholders and investors that "[it] plan[s] to complete the PASCAL CE Mark trial in 2018 and expect[s] to launch the product in 2019."[26]And in a

---

[24] *See* Fabien Praz, et al., *Compassionate use of the PASCAL transcatheter mitral valve repair system for patients with severe mitral regurgitation: a multicenter, prospective, observational, first-in-man study*, THE LANCET 390:773-80 at 779 (2017).

[25] *See* The CLASP Study Edwards PASCAL TrAnScatheter Mitral Valve RePair System Study (CLASP), https://clinicaltrials.gov/ct2/show/NCT03170349?term=PASCAL&cond=Regurgitation%2C+Mitral&rank=1 (last visited: January 27, 2019).

[26] *See* Transcript, Edwards Lifesciences (EW) Q2 2018 Earnings Call at 12 (July 26, 2018).

December 5, 2018 Investor Conference, Edwards announced an "expected milestone" as "[l]aunch of the PASCAL repair system for mitral patients in Europe by mid-year 2019."[27]

87.     In July 2017, Edwards posted a job posting for a "Principal Engineer, Manufacturing: PASCAL - Transcatheter Mitral & Tricuspid Therapies," to be based in Irvine, California.[28] This position, within the "Transcatheter Mitral Repair System (PASCAL) program," was to involve "developing and implementing new manufacturing processes and technology resulting in high capacity and a sustainable product line."[29]

88.     Edwards manufactures, has manufactured, and/or will imminently manufacture PASCAL in the United States for export, use, sale, and offer for sale outside the United States, including Europe, without authorization from Abbott.

89.     Edwards has reported that PASCAL is "[m]anufactured in and [e]xported from the U.S."[30]

---

[27] Press Release, Edwards Lifesciences, *Edwards Lifesciences Outlines Growth Strategy At Annual Investor Conference* (Dec. 5, 2018), https://www.edwards.com/ns20181205 (last visited January 27, 2019).

[28] *See* Edwards Job Posting for Principal Engineer, Manufacturing, PASCAL -Transcatheter Mitral & Tricuspid Therapies, THE LADDERS (posted July 25, 2017), https://www.theladders.com/job/principal-engineer-manufacturing-xfffd-pascal-transcatheter-mitral-tricuspid-therapies-edwards-lifesciences-irvine-ca_34832480 (last visited: January 27, 2019).

[29] *Id.*

[30] *See* The CLASP Study Edwards PASCAL TrAnScatheter Mitral Valve RePair System Study (CLASP), https://clinicaltrials.gov/ct2/show/NCT03170349?term=PASCAL&cond=Regurgitation%2C+Mitral&rank=1 (last visited: January 27, 2019).

- 20 -

90.     A recall and safety alert issued by the Canadian Government states that PASCAL is manufactured by Edwards LLC, address 1 Edwards Way, Irvine CA 92614, USA.[31]

**Edwards' Infringement Has and Will Irreparably Harm Abbott**

91.     Launching PASCAL would irreparably harm Abbott by artificially creating a two-player market, with Abbott having to compete against its own patented technology.

92.     Abbott has invested years and hundreds of millions of dollars in acquiring Evalve and developing MitraClip.  To obtain regulatory approval, Abbott had to convince regulatory bodies that MitraClip is a safe and effective treatment—a particularly challenging effort for what the FDA called "a first-in-class device representing a breakthrough technology."[32] Abbott also had to build the market for its device from scratch by educating and training physicians in this brand new technique for mitral valve repair, and securing reimbursement for patients for the MitraClip procedure.

93.     Through its infringing PASCAL device, Edwards will unjustly and irreparably reap the benefits of Abbotts's investments, without contributing to them.  PASCAL uses MitraClip's patented features and is designed to take away MitraClip customers.  Edwards told investors that

---

[31]   *See*   http://healthycanadians.gc.ca/recall-alert-rappel-avis/hc-sc/2018/66392r-eng.php   (last visited: January 27, 2019).

[32] Letter from Denise Hinton, Chief Scientist, FDA to Stephanie Philbin, Goodwin & Proctor LLP, Re: Citizen Petition for Due Diligence Determination of Patent Term Extension for MITRACLIP CDS; Docket Nos. FDA-2014-E-2358; FDA-2014-E-2359 (FDA RADM Chief Scientist Letter) at 7–8 (July 12, 2018) (denying petition).

PASCAL's "going to be a[n] … alternative for a market ….with … only one competitor," MitraClip, and serve "a patient population that's already being served" by MitraClip.[33]

94.    Abbott also will be harmed by having to divert resources to respond to PASCAL's unlawful infringement.

95.    Edwards already is using MitraClip's success in Abbott's COAPT clinical trial to propel PASCAL, telling investors that ***Abbott's*** "COAPT" trial "showed that ***we*** can alter the natural history of mitral regurgitation and … reduce mortality by intervening."[34]  Edwards also pointed to the "built-in market that's already been developed over time" by Abbott, the "tailwind" for PASCAL that MitraClip's results created, and the fact that "there's already reimbursement and approval process [] in place." [35]

96.    Abbott's harm from Edwards' infringement by the launch of PASCAL will be irreparable and unquantifiable, and it cannot be made whole by damages alone.

## THE PATENTS-IN-SUIT

97.    Abbott has invested heavily in developing and maintaining a portfolio of patents covering the MitraClip, including the Patents-in-Suit.

98.    The '097 patent is titled "Surgical device for connecting soft tissue," and was duly and legally issued on October 30, 2007.

---

[33] Transcript, Edwards Lifesciences Corp at Canaccord Genuity Growth Conference at 5-6 (Aug. 9, 2017); Transcript, Edwards Lifesciences Corporation Presentation at Goldman Sachs 39th Annual Global Healthcare Conference at 13 (June 13, 2018).

[34] Transcript, Edwards Lifesciences Corporation Analyst/Investor Day at 30 (Dec. 5, 2018).

[35] Transcript, Edwards Lifesciences Corporation Presentation at Goldman Sachs 39th Annual Global Healthcare Conference at 33 (June 13, 2018); Transcript, Edwards Lifesciences Corporation Analyst/Investor Day at 12 (Dec. 5, 2018); Transcript, Edwards Lifesciences Corporation at Wells Fargo Securities Healthcare Conference at 8 (Sep. 6, 2018).

99.     A true and correct copy of the '097 patent is attached as **Exhibit A**.

100.    The '813 is titled "Methods and devices for capturing and fixing leaflets in valve repair," and was duly and legally issued on June 22, 2004.

101.    A true and correct copy of the '813 patent is attached as **Exhibit B**.

102.    The '267 patent is titled "Fixation device and methods for engaging tissue," and was duly and legally issued on July 21, 2009.

103.    A true and correct copy of the '267 patent is attached as **Exhibit C**.

104.    The '388 patent is titled "Fixation devices, systems and methods for engaging tissue," and was duly and legally issued on June 15, 2010.

105.    A true and correct copy of the '388 patent is attached as **Exhibit D**.

106.    The '493 patent is titled "Fixation devices, systems and methods for engaging tissue," and was duly and legally issued on November 15, 2011.

107.    A true and correct copy of the '493 patent is attached as **Exhibit E**.

## EDWARDS' INFRINGEMENT OF THE ASSERTED PATENTS

108.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 107 above.

109.    As shown in the claim chart in **Exhibit F**, Edwards' PASCAL device meets each and every limitation of at least claim 1 of the '097 patent, either literally and/or under the doctrine of equivalents.  Thus, Edwards' manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States, infringes at least claim 1 of the '097 patent under 35 U.S.C. § 271(a).

110.    As shown in the claim chart in **Exhibit G**, Edwards' PASCAL device meets each and every limitation of at least claim 113 of the '813 patent, either literally and/or under the doctrine of equivalents.  Thus, Edwards' manufacture of PASCAL in the United States, including

for export, use, sale and offer for sale outside of the United States, infringes at least claim 113 of the '813 patent under 35 U.S.C. § 271(a).

111.     As shown in the claim chart in **Exhibit H**, Edwards' PASCAL device meets each and every limitation of at least claim 1 of the '267 patent, either literally and/or under the doctrine of equivalents.  Thus, Edwards' manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States, infringes at least claim 1 of the '267 patent under 35 U.S.C. § 271(a).

112.     As shown in the claim chart in **Exhibit I**, Edwards' PASCAL device meets each and every limitation of at least claim 1 of the '388 patent, either literally and/or under the doctrine of equivalents.  Thus, Edwards' manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States, infringes at least claim 1 of the '388 patent under 35 U.S.C. § 271(a).

113.     As shown in the claim chart in **Exhibit J**, Edwards' PASCAL device meets each and every limitation of at least claim 1 of the '493 patent, either literally and/or under the doctrine of equivalents.  Thus, Edwards' manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States, infringes at least claim 1 of the '493 patent under 35 U.S.C. § 271(a).

114.     Thus, Edwards' manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States, infringes at least one claim of each of the Patents-in-Suit at least pursuant to 35 U.S.C. § 271(a).

## <u>FIRST CAUSE OF ACTION</u>

### (Infringement of the '097 Patent)

115.     Abbott repeats and re-alleges the allegations of paragraphs 1 through 114 above.

116.    Edwards has infringed, and is infringing, one or more claims of the '097 patent through its manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.  Edwards is liable for infringement at least pursuant to 35 U.S.C. § 271(a).

117.    Unless enjoined by this Court, Edwards will continue to infringe the '097 patent and as a direct result Abbott will continue to suffer harm, including irreparable harm for which there is no adequate remedy at law.  Accordingly, Abbott is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

118.    Abbott will suffer damage as a direct and proximate result of Edwards' infringement of the '097 patent.  Thus, in addition to injunctive relief, Abbott is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment of Infringement of the '097 Patent)

119.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 118 above.

120.    Edwards plans to manufacture PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.

121.    Such conduct will infringe one or more claims of the '097 patent pursuant to 35 U.S.C. § 271(a).

122.    Edwards' infringing activity is imminent.

123.    As a result of the foregoing facts, there is an actual case or controversy between Abbott and Edwards regarding whether Edwards' manufacture of the PASCAL device in the United States will directly infringe one or more claims of the '097 patent.

124.    Abbott will be irreparably harmed by Edwards' infringing activities unless they are enjoined by this Court.  Abbott has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (Infringement of the '813 Patent)

125.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 124 above.

126.    Edwards has infringed, and is infringing, one or more claims of the '813 patent through its manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.  Edwards is liable for infringement at least pursuant to 35 U.S.C. § 271(a).

127.    Unless enjoined by this Court, Edwards will continue to infringe the '813 patent and as a direct result Abbott will continue to suffer harm, including irreparable harm for which there is no adequate remedy at law.  Accordingly, Abbott is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

128.    Abbott will suffer damage as a direct and proximate result of Edwards' infringement of the '813 patent.  Thus, in addition to injunctive relief, Abbott is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment of Infringement of the '813 Patent)

129.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 128 above.

130.    Edwards plans to manufacture PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.

131.    Such conduct will infringe one or more claims of the '813 patent pursuant to 35 U.S.C. § 271(a).

132.    Edwards' infringing activity is imminent.

133.    As a result of the foregoing facts, there is an actual case or controversy between Abbott and Edwards regarding whether Edwards' manufacture of the PASCAL device in the United States will directly infringe one or more claims of the '813 patent.

134.    Abbott will be irreparably harmed by Edwards' infringing activities unless they are enjoined by this Court.  Abbott has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### (Infringement of the '267 Patent)

135.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 134 above.

136.    Edwards has infringed, and is infringing, one or more claims of the '267 patent through its manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.  Edwards is liable for infringement at least pursuant to 35 U.S.C. § 271(a).

137.    Unless enjoined by this Court, Edwards will continue to infringe the '267 patent and as a direct result Abbott will continue to suffer harm, including irreparable harm for which there is no adequate remedy at law.  Accordingly, Abbott is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

138.    Abbott will suffer damage as a direct and proximate result of Edwards' infringement of the '267 patent.  Thus, in addition to injunctive relief, Abbott is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Infringement of the '267 Patent)

139.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 138 above.

140.    Edwards plans to manufacture PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.

141.    Such conduct will infringe one or more claims of the '267 patent pursuant to 35 U.S.C. § 271(a).

142.    Edwards' infringing activity is imminent.

143.    As a result of the foregoing facts, there is an actual case or controversy between Abbott and Edwards regarding whether Edwards' manufacture of the PASCAL device in the United States will directly infringe one or more claims of the '267 patent.

144.    Abbott will be irreparably harmed by Edwards' infringing activities unless they are enjoined by this Court.  Abbott has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION

### (Infringement of the '388 Patent)

145.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 144 above.

146.    Edwards has infringed, and is infringing, one or more claims of the '388 patent through its manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.  Edwards is liable for infringement at least pursuant to 35 U.S.C. § 271(a).

147.    Unless enjoined by this Court, Edwards will continue to infringe the '388 patent and as a direct result Abbott will continue to suffer harm, including irreparable harm for which there is no adequate remedy at law.  Accordingly, Abbott is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

148.     Abbott will suffer damage as a direct and proximate result of Edwards' infringement of the '388 patent.  Thus, in addition to injunctive relief, Abbott is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment of Infringement of the '388 Patent)

149.     Abbott repeats and re-alleges the allegations of paragraphs 1 through 148 above.

150.     Edwards plans to manufacture PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.

151.     Such conduct will infringe one or more claims of the '388 patent pursuant to 35 U.S.C. § 271(a).

152.     Edwards' infringing activity is imminent.

153.     As a result of the foregoing facts, there is an actual case or controversy between Abbott and Edwards regarding whether Edwards' manufacture of the PASCAL device in the United States will directly infringe one or more claims of the '388 patent.

154.     Abbott will be irreparably harmed by Edwards' infringing activities unless they are enjoined by this Court.  Abbott has no adequate remedy at law.

## NINTH CAUSE OF ACTION

### (Infringement of the '493 Patent)

155.     Abbott repeats and re-alleges the allegations of paragraphs 1 through 154 above.

156.     Edwards has infringed, and is infringing, one or more claims of the '493 patent through its manufacture of PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.  Edwards is liable for infringement at least pursuant to 35 U.S.C. § 271(a).

157.    Unless enjoined by this Court, Edwards will continue to infringe the '493 patent and as a direct result Abbott will continue to suffer harm, including irreparable harm for which there is no adequate remedy at law.  Accordingly, Abbott is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

158.    Abbott will suffer damage as a direct and proximate result of Edwards' infringement of the '493 patent.  Thus, in addition to injunctive relief, Abbott is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

### TENTH CAUSE OF ACTION

### (Declaratory Judgment of Infringement of the '493 Patent)

159.    Abbott repeats and re-alleges the allegations of paragraphs 1 through 158 above.

160.    Edwards plans to manufacture PASCAL in the United States, including for export, use, sale and offer for sale outside of the United States.

161.    Such conduct will infringe one or more claims of the '493 patent pursuant to 35 U.S.C. § 271(a).

162.    Edwards' infringing activity is imminent.

163.    As a result of the foregoing facts, there is an actual case or controversy between Abbott and Edwards regarding whether Edwards' manufacture of the PASCAL device in the United States will directly infringe one or more claims of the '493 patent.

164.    Abbott will be irreparably harmed by Edwards' infringing activities unless they are enjoined by this Court.  Abbott has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Abbott prays for the following relief:

(a)      A judgment that Edwards has infringed and is infringing each of the Patents-in-Suit;

(b)      A declaratory judgment that Edwards' commercial manufacture, use, offer for sale, or sale in, or importation into, the United States of PASCAL would infringe each of the Patents-in-Suit;

(c)      An order preliminarily and permanently enjoining Edwards, its officers, agents, servants, employees and attorneys, all parent, subsidiary, and affiliate corporations and other related business entities, and all other persons or entities acting in concert, participation or in privity with one or more of them, and their successors and assigns, from infringing, contributing to the infringement of, or inducing others to infringe the Patents-in-Suit;

(d)      A judgment awarding Abbott damages, in an amount to be determined at trial, together with interest and costs as fixed by the Court;

(e)      A judgment awarding Abbott reasonable attorneys' fees and its costs and reimbursements in this action, as provided by 35 U.S.C. § 285;

(f)      A judgment and order awarding Abbott an accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

(g)      Any and all other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Abbott demands a trial by jury on all issues so triable in this Complaint.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
James F. Hurst
Amanda J. Hollis
Gregory B. Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Benjamin A. Lasky
Aaron D. Resetarits
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

Erin C. Johnston
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Dated: January 28, 2019