IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT CARDIOVASCULAR SYSTEMS, INC. and EVALVE, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 19-0149 (MN) ) |
| EDWARDS LIFESCIENCES CORP. and EDWARDS LIFESCIENCES LLC, | ) **PUBLIC REDACTED VERSION** ) ) |
| Defendants. | ) ) ) |

**EDWARDS' REPLY TO ABBOTT'S OPPOSITION TO EDWARDS' MOTION TO EXCLUDE EXPERT OPINIONS UNDER *DAUBERT***

OF COUNSEL:

Nicholas Groombridge
Catherine Nyarady
Kripa Raman
Kira A. Davis
Michael Milea
Allison C. Penfield
Ayelet Evrony
Joshua Reich
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Jeffrey L. Moyer (#3309)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
Moyer@rlf.com
Farnan@rlf.com
Haynes@rlf.com

*Attorneys for Defendants Edwards Lifesciences Corp. and Edwards Lifesciences, LLC*

Dated: March 13, 2020

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Ms. Stamm's Lost Profits Analysis Should Be Excluded .......................................1

    B. Ms. Stamm's Reasonable Royalty Opinions Should Be Excluded.........................5

    C. Abbott's Evidence Regarding Demand for Patented Features Is Unreliable...........7

    D. Mr. Spar's Opinions Regarding PTA Are Improper Expert Testimony................10

III. CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advanced Medical Optics* v. *Alcon, Inc.*,
  No. 03-1095-KAJ, 2005 WL 782809 (D. Del. Apr. 7, 2005) ...................................................... 8

*AstraZeneca UK Ltd.* v. *Watson Labs., Inc.*,
  C.A. No. 10-915-LPS, 2012 WL 6043266 (D. Del. Nov. 14, 2012) ....................................... 10

*Bayer* v. *Baxalta*,
  No. 16-cv-1122-RGA, 2019 WL 330149 (D. Del. Jan 25, 2019) ............................................. 7

*Boston Sci.* v. *Cordis*,
  838 F. Supp. 2d 259 (D. Del. 2012) .......................................................................................... 2

*Broadcom Corp.* v. *Emulex Corp.*,
  No. 09-1058-JVS, 2011 WL 11025895 (C.D. Cal. Dec. 13, 2011) .......................................... 6

*Corelogic Info. Solutions, Inc.* v. *Fiserv, Inc.*,
  No. 10-132-RSP, 2012 WL 12904000 (E.D. Tex. Sept. 20, 2012) ........................................... 8

*CSAIRO* v. *Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) ................................................................................................ 8

*Exmark Mfg. Co. Inc.* v. *Briggs & Stratton Corp.*,
  No. 10-187, 2018 WL 4976559 (D. Neb. Oct. 12, 2018) ......................................................... 5

*EZ Dock, Inc.* v. *Schafer Systems, Inc.*,
  No. Civ. 98–2364, 2003 WL 1610781 (D. Minn. March 8, 2003) ...................................... 2, 5

*Izumi Prods. Co.* v. *Koninklijke Philips Elecs. N.V.*,
  315 F.Supp.2d 589 (D. Del. 2004) ............................................................................................ 9

*Limelight Networks, Inc.* v. *XO Commc'ns, LLC*,
  No. 3:15-CV-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) ..................................... 6, 7

*McDaniel* v. *Kidde Residential & Commercial*,
  No. 2:12-CV-1439, 2015 WL 5883724 (W.D. Pa. Oct. 8, 2015) ............................................. 5

*Oiness* v. *Walgreen Co.*,
  88 F.3d 1025 (Fed. Cir. 1996) .................................................................................................. 2

*Pfizer Inc.* v. *Teva Pharm. USA, Inc.*,
  461 F. Supp. 2d 271 (D.N.J. 2006) ........................................................................................... 8

*Ravo* v. *Covidien LP*,
  55 F. Supp. 3d 766 (W.D. Pa. 2014) ......................................................................................... 6

# TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

*ROY-G-BIV Corp.* v. *ABB, Ltd.*,
  No. 6:11-CV-622, 2014 WL 12465449 (E.D. Tex. Aug. 1, 2014) ............................................7

*Stragent, LLC* v. *Intel Corp.*,
  No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ..............................................6

*W.L. Gore & Assocs., Inc.* v. *C.R. Bard, Inc.*,
  C.A. No. 11-515-LPS-CJB, 2015 WL 12815314 (D. Del. Nov. 20, 2015) .............................10

*In re Zoloft*,
  26 F. Supp. 3d 449 (E.D. Pa. 2014) .........................................................................................9

I. **INTRODUCTION**

Abbott failed to address Edwards' cases regarding reliable basis law. Instead, Abbott incorrectly asserts that Edwards' Motion, on Ms. Stamm and the Doctors, is based on hotly contested facts. And, Mr. Spar's opinions remain improper legal opinions.

II. **ARGUMENT**

### A. Ms. Stamm's Lost Profits Analysis Should Be Excluded

Abbott does not dispute that most patients who can be treated with MitraClip are not. Nor that medical management is more commonly used than MitraClip to treat such patients. Nor that a heart team chooses between MitraClip, medical management and other options such as PASCAL. Nor that, during the damages period, MitraClip was particularly disfavored compared to medical management among the European physician population at issue due to the MitraFR study results. Indeed, its own physician experts have noted medical management is "the most appropriate comparison" to MitraClip and is the "standard of care" for secondary MR patients, which is why both of Abbott's COAPT and MitraFR MitraClip trials were randomized against medical management. (Raman Ex. 4 ¶¶ 37-38 (Sorajja Opening); Ex. 6 ¶ 82 (Little Opening).)

In view of these uncontested facts, to establish that ▮▮▮▮▮▮▮▮▮▮ Ms. Stamm needed to show that it was more likely than not that ▮▮▮▮ PASCAL was commercially implanted, MitraClip, and not medical management, was the second choice of the implanting physicians. Otherwise, Ms. Stamm cannot rule out the significant possibility that medical management would have often been chosen over MitraClip in the but-for world, as occurs in the real world. Whether MitraClip could theoretically have treated a PASCAL patient is irrelevant if medical management was nonetheless preferred to MitraClip and would have been chosen for a MitraClip treatable patient, as is often the case in the real world.

Ms. Stamm never adduced such evidence, ▮▮▮▮▮▮▮▮▮▮. The

direct source of such evidence would have been market surveys of the implanting physicians. But neither she, nor any source on whom she relies, conducted or obtained any such surveys. (Raman Ex. 13 at 60:2-5, 80:11-18 (Stamm Tr.); Ex. 58 at 165:24–168:7 (Grennan Tr.).) This is fatal. *See EZ Dock, Inc.* v. *Schafer Systems, Inc.*, 2003 WL 1610781, at * 5-6 (D. Minn. March 8, 2003) and *Oiness* v. *Walgreen Co.*, 88 F.3d 1025, 1032 (Fed. Cir. 1996) (courts noted lack of survey evidence to test whether expert assumptions were properly anchored to facts of case).[1]

Nor did Ms. Stamm try to extrapolate such information from the "anecdotal" evidence. This is unsurprising. Abbott does not dispute that a plethora of "anecdotal" evidence shows that PASCAL was perceived by European physicians as positively differentiated from MitraClip (and thus more likely to be preferable to medical management), including that it treats some patients better, more easily, or at all. (Opp'n at 9.) Abbott cannot dispute that such positive differentiation has significant market expansive consequences (i.e., allowing for sales that would have otherwise gone to medical management), since it does not dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, Ms. Stamm ignores critical evidence of record relevant to her opinion that ▮▮▮▮▮▮ sales were lost sales, rendering her opinions unreliable.[2] Abbott points only to her ***reply*** report, which cannot remedy this failing.

Abbott's "targeting MitraClip centers" argument failed during the P.I. (D.I. 164 at 44-46.)

---

[1] Abbott's *Boston Scientific* case is not on point – there both parties experts admitted that due to safety concerns, certain cases required a particular sized stent, and all stents of that size were interchangeable, and lost profits were awarded for only certain cases, constituting 44% of infringing sales. *Boston Sci.* v. *Cordis*, 838 F. Supp. 2d 259, 270-275 (D. Del. 2012).

[2] Abbott's assertion (Opp'n at 5) that the evidence Edwards points to was not cited in interrogatory responses is incorrect –these documents were depositions exhibits and cited to in responses to damages interrogatories that were served prior to the start of expert discovery. 2019-11-06 Edwards First Supp. and Second Supp. R&Os to Interrogatories, at 26-33, 73-77.

2

Abbott's arguments about Dr. Kipperman's and Dr. Kaneko's testimony fail because such testimony came after Ms. Stamm's deposition in this case and thus could not have supported her opinions. The U.K. proceedings cited similarly post-date her opinions and were produced by Abbott after receiving this Motion. More importantly, such testimony focuses on whether there is randomized clinical evidence regarding PASCAL compared to MitraClip. This does not bear on the issue at hand – whether the commercially implanting physicians, who nonetheless chose PASCAL, did so because they preferred only Pascal and not MitraClip over medical management.

Dr. Grennan, on whom Ms. Stamm relies heavily for her lost sales assumptions, confirmed that such physician perceptions of differentiation are indeed the driver of decision-making ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Raman Ex. 15 at 191:24-193:11 (Grennan Tr.).) This directly undermines Abbott's argument that such "views" as reflected in "anecdotal" evidence do not show market expansion, and can be ignored, particularly when Ms. Stamm is opining there were *no* market expansive sales.

Ms. Stamm's "analysis" of the relative impact of MitraFR, which Abbott concedes only came in her reply report, did not retroactively support her burden opinions. Even in reply, she merely pointed to documents indicating that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ But this statement in no way supports her assumption (contrary to Dr. Armstrong's and Dr. Feldman's unrebutted opinions) that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ If MitraFR affected PASCAL even slightly less than it did MitraClip, then PASCAL would have been preferred over medical management in instances where MitraClip is not (as Dr. Armstrong notes is indeed the case). Those are not lost sales.

And Ms. Stamm's purported reliance in her reply report on "unchallenged" Abbott clinician experts does not appear in her reply report, and the proposition does not appear in any

3

Abbott clinician's report. (Opp'n at 10.) The closest reference appears to be Dr. Makar's artfully worded opinion that if *he* had already planned to do a PASCAL procedure and it was suddenly unavailable, but MitraClip was, he would not "opt to use no clip." (Raman Ex. 8 ¶ 4.8 (Makar Opening).) But Dr. Makar tellingly does not speak to the but-for scenario, where PASCAL was not available and MitraClip would have to be chosen over medical management on its own, rather than a back up to the differentiated PASCAL. And he makes no attempt to assert that other physicians, let alone *everyone* who implanted PASCAL in Europe, would have in *every instance* chosen MitraClip over medical management in the but-for world, as Ms. Stamm assumes.

Next, the Stamm reply report paragraph 41 Abbott references does not rebut any of the "forecasts" evidence discussed in Edwards opening brief. And Dr. Sullivan did indeed rely on █████████████████████████████████████████████████████████████. (Raman Ex. 2 ¶¶ 83, 86, 91, 151, 383-384 (Sullivan Rebuttal).) Further, Ms. Stamm admitted that her analysis of ██████████████████████████████████████ and that on the issue of whether ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Raman Ex. 13 at 95:17-97:18 (Stamm Tr.).)

As previously noted, Dr. Grennan's opinions do not save Ms. Stamm's analysis, but rather consistently show her lost sales assumptions were fundamentally wrong. His market expansion opinions, to which Abbott points, came only in his reply report, and cannot retroactively support Ms. Stamm's opinions. Dr. Grennan conceded that he did not do anything to try to quantify damages to Abbott in any way. (Raman Ex. 58 at 43:21–51:22 (Grennan Tr.).) His qualitative opinions on harm to Abbott cannot support an assumption of ██████████. More fundamentally, Abbott points to no analysis by Dr. Grennan, even in reply, of the key contradictory evidence Ms.

Stamm ignored. Dr. Grennan cannot save her. *EZ Dock, Inc.*, 2003 WL 1610781, at *5-6.

Abbott's cases are inapposite. *Micro Chem* and *EMC* did not involve an expert's complete failure to address contradictory evidence fatal to her assumptions. *King* involved a single player but-for world, unlike here, where medical management would be a key alternative to MitraClip that Ms. Stamm assumes ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ This is contrary to the reasonable probability standard of *Rite Hite*.

**B. Ms. Stamm's Reasonable Royalty Opinions Should Be Excluded**

Ms. Stamm's royalty opinions were offered only in reply. Abbott has the burden of proof on damages, making these new reply opinions improper. Abbott does not dispute this.

Exclusion is also necessary because she fails to ground her assumption, that **each** of the three purported patent "families" is worth as much as ▇▇▇▇▇▇▇ on any technical comparison. And, her assumption is not an adoption of, or justified by, Dr. Sullivan's analysis. He opined that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Raman Ex. 2 ¶¶ 267, 269, 275-277 (Sullivan Rebuttal); Ex. 3 ¶ 87 (Stamm Reply).) Ms. Stamm assumed, absent support, that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Sullivan opined ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Raman Ex. 2 ¶ 267-8, 276 (Sullivan Rebuttal).) And, his comparability opinions had technical and economic support. (Raman Ex. 2 ¶¶ 264-74 (Sullivan Rebuttal).) Thus, Abbott's *Exmark* and *McDaniel* cases are inapposite. Additionally, in *Exmark* the expert's methodology was deemed reliable on its own, not only because it was consistent with the opposing party's analysis. *Exmark Mfg. Co. Inc.* v. *Briggs & Stratton Corp.*, 2018 WL 4976559, at *2-4 (D. Neb. Oct. 12, 2018). In *McDaniel*, the expert analysis applying the same technique was not subject to any *Daubert* challenge. *McDaniel* v. *Kidde Residential & Commercial*, 2015 WL 5883724, at *5 (W.D. Pa. Oct. 8, 2015).

5

Dr. Dasi's and Mr. Chang's analyses offer no support for Ms. Stamm's assumption that each of the patent "families" could be valued equally, let alone the same as ▬. Abbott never asserts its experts opined on value compared to ▬. Indeed, their testimony is directly to the contrary. (Br. at 13.) Ms. Stamm's royalty opinions are unreliable for failure to "demonstrate a 'minimum threshold' of comparability." *Ravo* v. *Covidien LP*, 55 F. Supp. 3d 766, 778-780 (W.D. Pa. 2014). Abbott's *Summit 6* v. *Samsung Elecs. Co.* case did not implicate license rate comparability, and it also involved a structurally sound methodology tied to the case facts.

Ms. Stamm's report offers no explanation of what constitutes a patent "family", or any technical or legal basis for deeming ▬▬▬▬▬▬▬▬▬▬ Abbott points to none. And at deposition she was similarly unable to offer any explanation or support on these points: ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (Raman Ex. 13 at 136:19-139:25; 141:7-17 (Stamm Tr.).) Such unverifiable assumptions (that even the expert cannot explain) reflect an arbitrary, unreproducible, and unreliable methodology that warrants exclusion. *Limelight Networks, Inc.* v. *XO Commc'ns, LLC*, 2018 WL 678245, at *8-9 (E.D. Va. Feb. 2, 2018); *Stragent, LLC* v. *Intel Corp.*, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014).

Unlike Dr. Sullivan, Ms. Stamm's report provided ***no*** justification for why the royalties would be ▬▬▬▬ This assumption, coupled with her arbitrary definition of "family" and unsupported assumption that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is indeed the absurd logical extension of her analysis. No reliable methodology constrains her from ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Broadcom* only undermines Abbott's argument. There, the expert's comparability analysis adjusted all rates downward. *Broadcom Corp.* v. *Emulex Corp.*, 2011 WL 11025895, at *4-6 (C.D. Cal. Dec. 13, 2011).

6

On apportionment, Abbott's argument that Ms. Stamm's methodology is reliable because she purportedly adopted Dr. Sullivan's methodology again fails, and *Exmark* is again inapposite. Unlike Ms. Stamm, as Abbott itself acknowledges, Dr. Sullivan's analysis of a rate based on the parties' willingness to pay was used ▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n at 5.) In contrast, Abbott acknowledges Ms. Stamm's royalty rate ▮▮▮▮▮▮▮▮▮▮▮▮. (Opp'n at 6.) In his analysis, Dr. Sullivan explicitly notes that ▮▮▮▮▮▮▮▮▮▮▮▮. (Raman Ex. 2 ¶ 285 (Sullivan Rebuttal).) Contrary to Abbott's insinuation, ▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n at 16.) Rather, ▮▮▮▮▮▮▮▮▮▮▮▮. (Raman Ex. 2 ¶¶ 287, 275 (Sullivan Rebuttal).) Ms. Stamm's arbitrary choice of ▮▮▮▮▮▮▮▮▮▮▮▮ in no way serves to reliably apportion her rate. The selection necessarily reflects, at least in part, the relative bargaining powers of the two parties. *Bayer* v. *Baxalta*, 2019 WL 330149, at *18-9 (D. Del. Jan 25, 2019.) As such, to the extent Abbott argues this choice ▮▮▮▮▮ also reflects apportionment, the amount of any alleged apportionment is both completely unspecified and arbitrary, again rendering her analysis unreliable. *Limelight Networks,* 2018 WL 678245, at *4-7; *ROY-G-BIV Corp.* v. *ABB, Ltd.*, 2014 WL 12465449, at *3 (E.D. Tex. Aug. 1, 2014).

### C. Abbott's Evidence Regarding Demand for Patented Features Is Unreliable

Abbott seeks to exclude Edwards' clinicians from opining about patient selection and the relative advantages and benefits to patients of PASCAL, but avoid exclusion of its own Doctors opinions regarding why all physicians buy MitraClip and what "drives demand." In the first instance, the law favors Edwards on these issues. The former is properly within the expertise of

7

physicians, based on experience and knowledge, whereas the latter is beyond their expertise, particularly when, as here, they conducted no studies or surveys on purchasing decisions. *Advanced Medical Optics* v. *Alcon, Inc.*, 2005 WL 782809, at *2-4 (D. Del. Apr. 7, 2005); *Pfizer Inc.* v. *Teva Pharm*. USA, Inc., 461 F.Supp. 2d 271, 275-278 (D.N.J. 2006). Abbott's *Corelogic* case involved a *financial* expert's lack of survey evidence, which was not fatal only because, unlike here, he was *not* going to "testify directly to the demand for the patented feature." *Corelogic Info. Solutions, Inc.* v. *Fiserv, Inc.*, 2012 WL 12904000, at *1-2 (E.D. Tex. Sept. 20, 2012).

Abbott's assertion that the Doctors' identification of allegedly demand-driving features was uninformed by the patents-in-suit is not plausible. Each of these Doctors described the features in language mirroring that of Abbotts' technical experts in discussing the patented features. (Raman Ex. 59 § XVII(H) (Chang Rebuttal); Ex. 60 ¶¶ 915-948 (Dasi Opening).) Then, the Doctors conceded on reply, but without any explanation, that "of course" physicians in general never discuss MitraClip in the litigation-inspired terms the Doctors used to opine on demand. (Ex. 5 ¶¶ 6-7 (Sorajja Reply); Ex. 7 ¶ 8 (Little Reply); Ex. 9 ¶ 7 (Makar Reply).) Notably, the Doctors (and Abbott in its Opposition) point to no evidence of physicians using different terms to convey that demand is driven by the same features. The Doctors' opinions do not reflect the view of physicians at large as they purport to, but are mere, unreliable *ipse dixit*.

Abbott's assertion that Edwards' clinicians agree that the patented features of MitraClip drive demand (Opp'n at 17) is also incorrect. The testimony at issue is neither specific to all the features identified by the Doctors, or even to the entirety of any single feature as the Doctors characterize it, and in any case, it does not indicate that the features drive purchasing decisions. (Abbott Ex. 3 at 248:22-249:10 (Kaneko tr.).) *CSAIRO* v. *Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) (not enough to show that patented feature is viewed as valuable or even essential).

8

Abbott argues about what is shown in the contrary evidence Edwards cites. But Abbott does not dispute that the Doctors failed to consider or analyze such evidence. *In re Zoloft*, 26 F. Supp. 3d 449, 460–61 (E.D. Pa. 2014). And, Abbott's arguments do not show that the Doctor opinions can be reconciled with this evidence.

It is indeed relevant that Abbott's own marketing materials do not tout the patented features (whether "using the patent terminology" or otherwise). *Izumi Prods. Co.* v. *Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 614 (D. Del. 2004). Notably, Abbott does not assert such materials market the patented features by using different terminology.

Abbott is also wrong with respect to Edwards' marketing materials, since the technical expert to which it cites references documents that serve only to distinguish PASCAL from MitraClip by pointing to the importance of non-patented features, such as PASCAL's "█████████████████████████████████████████████████████████████████████████████████████████████████████████." (Raman Ex. 61 at -327-330 (ABT1087325); Ex. 62 at -435 (EDW-ABT00066417).) Indeed, faced with this evidence, Ms. Stamm did not attempt to dispute the absence of patented features in Edwards' marketing, instead asserting, "█████████ █████████████████████████████████████████████████████████████████████████ (Raman Ex. 3 ¶ 21 (Stamm Reply).)

Abbott's attempts to downplay the demand-driving role of unpatented features are contradicted by the admissions of its own witnesses and documents, stretching back to the PI phase. (Br. at 15-18; Raman Ex. 63 at 70:8-70:20 (Meadors Tr..); Ex. 64 at 52:12-19 (M. Dale Tr.); Ex. 65 at 118:15-119:14 (Thornton Tr.).; Ex. 66 at 547:18-20 (Gervais Tr.).) And Abbott has no explanation for repeated statements from Evalve's founders and its own MitraClip technical declarant, emphasizing the commercial importance of such non-patented features rather than clip

9

design. (Br. at 18, Fns. 5, 7.) Instead, it incorrectly asserts that Edwards' clinicians and economic expert failed to address such evidence in their rebuttals to the opinions of Abbott's Doctors. Not true. (Raman Ex. 17 ¶¶ 52-53 (Armstrong Rebuttal) (importance of heart team); Ex. 17 ¶¶ 89-96 (Armstrong Rebuttal) and Ex. 67 at ¶¶ 56, 63-64, 82-89 (Kipperman Rebuttal) (importance of wider paddles, spacer, and independent grasping features to physicians); Ex. 2 §§ 6.3.4, 11.4 (Sullivan Rebuttal) (noted in the very reply paragraphs cited by Abbott).)

### D. Mr. Spar's Opinions Regarding PTA Are Improper Expert Testimony

Abbott does not dispute that Mr. Spar offers legal opinions or that "legal opinions are often excluded." (Opp'n Br. at 2, 7, 19-20; Br. at 20.) Neither the fact that the legal issue relates to a PTO decision nor that Mr. Spar used to work at the PTO alters the analysis. Likewise, the burden of proof does not impact whether Mr. Spar is offering an improper legal opinion. Abbott cites no support for these theories. Opinions regarding PTO practices are not always admissible. *AstraZeneca UK Ltd.* v. *Watson Labs., Inc.*, 2012 WL 6043266, at *1 (D. Del. Nov. 14, 2012). And, Edwards has not overstated the law as Abbott accuses. *Id.* ("[T]he judges in this District have a well-established practice of excluding the testimony of legal experts, absent extraordinary circumstances."). Mr. Spar's opinion is "an improper attempt to offer opinions from a legal expert about what the facts of the record indicate to him," which warranted exclusion in the case Abbott cites (Opp'n Br. at 20). *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 2015 WL 12815314, at *3-4 (D. Del. Nov. 20, 2015). This is not a bench trial as Abbott suggests and Mr. Spar's testimony will cause jury confusion at least as to its purpose. Mr. Spar's opinions should be excluded.[3]

### III. CONCLUSION

Edwards respectfully requests that the Court grant its Motion.

---

[3] While Edwards agrees the issue can be decided as a matter of law, even in that context, Mr. Spar's opinions are improper legal opinions, as Abbott concedes no facts are in dispute.

10

| | |
|---|---|
| OF COUNSEL:<br>Nicholas Groombridge<br>Catherine Nyarady<br>Kripa Raman<br>Kira A. Davis<br>Michael F. Milea<br>Allison C. Penfield<br>Ayelet Evrony<br>Joshua Reich<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>(212) 373-3000<br>ngroombridge@paulweiss.com<br>cnyarady@paulweiss.com<br>kraman@paulweiss.com<br>kdavis@paulweiss.com<br>mmilea@paulweiss.com<br>apenfield@paulweiss.com<br>aevrony@paulweiss.com<br>jreich@paulweiss.com<br><br>David E. Cole<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>(202) 223-7300<br>dcole@paulweiss.com<br><br>Dated:  March 13, 2020 | */s/ Kelly E. Farnan*<br>Jeffrey L. Moyer (#3309)<br>Kelly E. Farnan (#4395)<br>Christine D. Haynes (#4697)<br>Richards, Layton & Finger, P.A.<br>920 N. King Street<br>One Rodney Square<br>Wilmington, DE 19801<br>(302) 651-7700<br>Moyer@rlf.com<br>Farnan@rlf.com<br>Haynes@rlf.com<br><br>*Attorneys for Defendants Edwards Lifesciences Corp. and Edwards Lifesciences LLC* |

11

## **CERTIFICATE OF SERVICE**

I, hereby certify that on March 13, 2020, true and correct copies of the foregoing were caused to be served on the following counsel of record as indicated

**BY E-MAIL**

Karen E. Keller
David M. Fry
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801

**BY E-MAIL**

James F. Hurst
Amanda J. Hollis
Gregory B. Sanford
Rebecca Fitzpatrick
Kirkland & Ellis LLP
300 North La Salle
Chicago, IL 60654

Benjamin A. Lasky
Aaron D. Resetarits
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Erin C. Johnston
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Farnan@rlf.com